UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10304-RGS

ELLEN NYEPON

v.

HUMAN RESOURCES DEVELOPMENT INSTITUTE, INC.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

August 27, 2012

STEARNS, D.J.

Plaintiff Ellen Nyepon brought this lawsuit alleging that defendant Human Resources Development Institute, Inc. (HRDI), failed to consummate an agreement to purchase a property in Dorchester, Massachusetts, in which Nyepon had an interest as a trust beneficiary. On March 1, 2012, this court denied HRDI's motion to dismiss, finding that the allegations of the Complaint, when read against the terms of the contract and HRDI's offer, were sufficient to suggest a plausible entitlement on Nyepon's part to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). After completing discovery, HRDI renewed its motion for a brevis disposition.

FACTUAL BACKGROUND

The facts, in the light most favorable to Nyepon as the nonmoving party, are as

follows.[1]  Prior to January of 2007, Nyepon owned the Dorchester property at which she ran a childcare facility.  At some point in 2005 or 2006, Alpha Holding Corporation (Alpha) approached Nyepon with an investment deal.  Healy Aff. ¶ 1-3.  On October 5, 2006, Nyepon executed a quitclaim deed assigning legal title to the property to a Trust for which Alpha served as the Trustee.  In exchange, Nyepon was paid $54,508.27 in cash, and was given a two-year, 95% beneficial interest in the Trust.[2]  A 5% interest was retained by Chad Healy, an Alpha associate.  *Id.* ¶ 4; Def.'s Ex. 1.[3]

Several months after conveying the property to the Trust, Nyepon hired a real estate broker to sell the property outright.  An expression of interest came from HRDI.  On January 30, 2007, Nyepon and HRDI entered into a "Memorandum of Understanding" under the terms of which HRDI was to purchase the property contingent on its securing of a contract from the Commonwealth of Massachusetts to provide drug treatment services on the property.  Def.'s Ex. A.  In the months that followed, HRDI made several inspections of the property, and Nyepon began closing

---

[1] *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993).

[2] The Trust document states that the duration of the Trust was for two years (terminating in October of 2008), with Alpha then taking full ownership of the property (unless it was redeemed during the interval by Nyepon or sold by the Trustee to a third-party).

[3] The pertinent terms of the Trust are appended to this decision.

down her childcare center.

On April 7, 2007, Nyepon's broker informed her that HRDI had received the state contract, but had decided against going forward with the purchase. Nyepon was forced as a result to shut down her childcare center completely. At some point in 2009, Healy learned that the Dorchester property was on the brink of foreclosure. In order to protect his investment, he purchased the property in a "short sale" from Alpha in September of 2009. Healy Aff. ¶ 6.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id*. Rule 56 "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

HRDI argues that because Nyepon (unbeknownst to it) had conveyed her legal title to the property to the Trust, her negotiations with HRDI were meaningless in the sense that she was attempting to sell HRDI something (like the Brooklyn Bridge) to which she had no right.[4]  For her part, Nyepon does not dispute that she entered into the Trust agreement with Alpha, or that she conveyed legal title to the property to the Trust, retaining only an equitable interest.  Instead, she contends that she was given the "implied and express permission to sell the property at issue [by Alpha]."  Pl.'s Opp'n at 1.  This is a matter of dispute. Thomas Standen, Alpha's President, avers in a sworn statement that neither Alpha nor Healy were aware of the negotiations between Nyepon and HRDI, much less had given permission to Nyepon to sell the property.   Standen Aff. *Id*. ¶ 11-12. Nor, according to Standen, did Nyepon ever exercise her right under the Trust agreement to repurchase the property (nor did she request an opportunity to do so).  *Id.* ¶ 9.  The dispute, however, is of no moment as there is no allegation (much less a factual proffer) that Nyepon ever disclosed to  HRDI that her authority to make

---

[4] From HRDI's perspective, the contract might be seen as voidable instead of void.  That is, if HRDI had sued for specific performance, it could have elected to purchase what Nyepon owned at the time the Memorandum of Understanding was entered – a 95% beneficial interest (equitable interest) in the property – with a right of repurchase. *See e.g.*, *Crispo v. Bowman*, 2003 WL 1861554, *4 (Mass. Super. Mar. 5, 2003) (buyer may purchase a mere equitable interest in real property, but takes only such title as the seller has).  It is clear from the Memorandum, however, that HRDI was negotiating for the purchase of a fee simple and not an equitable interest in the property.

the sale depended on the oral permission of Alpha (the owner of legal title to the property).  *Cf. Debral Realty, Inc. v. DiChiara*, 383 Mass. 559, 566 (1981) ("A property owner offering to sell or mortgage property typically represents that he has good title to the property and that he is, in fact, free to sell or encumber it.  In these circumstances, a false representation of title may give rise to a cause of action in fraud or deceit.").

The Trust document is clear that only the Trustee "shall have the right, in its absolute and complete discretion, to sell Trust property." Def.'s Ex. 1.  The document also contains a standard integration clause, stating that the Trust "may be amended, revoked, or terminated only by a written agreement signed by the Trustee and all of the Beneficiaries or their designees." *Id.*[5]  While "a provision that an agreement may not be amended orally but only by a written instrument does not necessarily bar oral modification of the contract," *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 439 (1992), to support the existence of an oral modification, the parol evidence must be sufficiently weighted and of competent probity to present a material issue for trial; that is, the parol evidence must be of sufficient strength to present an ambiguity between the actual conduct of the parties and the contract.  *See E. Holding Corp. v.*

---

[5] Whether the agreement was understood fully by Nyepon is of no moment.  She is charged, as a party to a contract, with having read (and understood) its terms. *Cormier v. Cent. Mass. Chapter of Nat'l Safety Council*, 416 Mass. 286, 289 (1993).

*Congress Fin. Corp. (New England)*, 74 Mass. App. Ct. 737, 742 n.5 (2009) (ambiguity cannot be predicated solely on statements in affidavits). That is not the case here.[6] Because Nyepon lacked the legal capacity to perform under the contract, HRDI was excused from any reciprocal duty to perform. *See Leigh v. Rule*, 331 Mass. 664, 668 (1954) ("[T]he law does not require a party to tender performance if the other party has shown that he cannot or will not perform.").

### ORDER

For the foregoing reasons, defendant's motion for summary judgment is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

### APPENDIX
The 54-56 East Street Trust, Trust No. MA 06030 (in relevant part)

This Trust is created for the purpose of holding title to property located at [ ] Dorchester, MA.

The Settlor Beneficiaries shall transfer title to the Trust property, by Deed, to the Trustee, contemporaneous with the execution of this Trust agreement, to be held by Trustee pursuant to the terms hereof. After the

---

[6] There is another complication. An oral agreement involving the conveyance of land to another is unenforceable under the Statute of Frauds, Mass. Gen. Laws ch. 259, § 1. *Ravosa v. Zais*, 40 Mass. App. Ct. 47, 50 (1996).

transfer of Trust property to the Trustee, the Settlor Beneficiaries/owner herein described as Settlor Beneficiaries shall no longer hold title to the property, but shall own an indirect, beneficial interest in the Trust, which shall hold title to the Property. The Trust term shall be two years (730 days).  The Trust shall terminate sixty (60) days after transfer and/or sale of Trust property and the distribution of assets.

The Settlor Beneficiaries create this Trust and transfers title to the property to the Trustee to facilitate the sale and assignment of percentage ownerships interests of the property by and through the sale and assignment of beneficial interests in this Trust.

The Trustee shall hold title to the Trust property and the proceeds and profits from it for the benefit of the beneficiaries and their successors and assigns and . . . shall have the right, in its absolute and complete discretion, to sell Trust property for that purpose and as provided for herein.

Notwithstanding the foregoing, the Settlor Beneficiaries shall have the right to occupy the Trust property as an occupant to the terms of the Occupancy Agreement between Trustee and Settlor Beneficiaries attached hereto and incorporated herein (Occupancy Agreement).

From the date of this agreement, until the Trust property is sold, the Settlor Beneficiaries shall possess an option, but not an obligation, to purchase the trust property from the Trust. If Settlor Beneficiaries does not exercise their option to repurchase the Trust property, the investor co-beneficiaries Trust Capital contribution and equity match only shall be repaid if there are sufficient proceeds from a market sale or determined by a recent certified market appraisal of the property. Otherwise, the investor co-beneficiary shall not be repaid the Trust capital contribution or equity match and no amount shall be due and owing thereafter from the Settlor Beneficiaries and/or Trustee to the investor co-beneficiary with respect to the investor co-beneficiaries contribution.

If Settlor Beneficiaries do not exercise their option to purchase the Trust property and the property is sold, the proceeds of such sale shall be paid and disbursed to the extent available, as follows: first, all encumbrances against the Trust property shall be paid in full; second, all costs with

respect to the disposition and sale of the Trust property, including, but not limited to advertising costs, legal fees and closing costs, brokerage commissions and auction costs, shall be paid in full; third, all other costs of the Trusts shall be paid in full; fourth, all investor co-beneficiary Trust capital contribution and equity match amount shall be paid in full; fifth, any Settlor Beneficiaries contribution shall be paid in full to Settlor Beneficiaries; sixth, all remaining proceeds from the sale or other disposition of property shall be distributed to the Settlor Beneficiaries. The beneficiaries shall not; have the power of direction to the Trustee; the right to receive or direct the disposition of the proceeds from the payments under the occupancy and from the mortgage, sale or other disposition of the Trust property; or the right to allow use of, occupy, sell, manage and control the Trust property.

The right to the proceeds and profits shall be deemed to be personal property. A beneficiary has only an interest in the proceeds and profits, it being the intention of the parties to this agreement to vest the full equitable and legal title to the Trust property in the Trustee.

The Beneficiaries shall not have and retain (except as otherwise herein expressly provided) the management of the Trust property, and nor control of the purchasing, leasing, handling, maintenance, encumbering, selling or making of any other disposition of the Trust property.

Amendments, Modifications to or Termination of, Agreement. This Trust Agreement contains the entire understanding between the parties and may be amended, revoked, or terminated only by a written agreement signed by the Trustee and all of the Beneficiaries or their designees, except that termination may result from the operation of this Agreement.

Def.'s Ex. 1.